UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-430-F

| | |
|---|---|
| MONIFA A. GETHERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| WAKE COUNTY SHERIFF DONNIE | ) |
| HARRISON and JOHN DOE, SURETY | ) |
| BOND for WAKE COUNTY SHERIFF | ) |
| DONNIE HARRISON, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on the Motion to Dismiss [DE-29] filed by Defendants Wake County Sheriff Donnie Harrison and John Doe, Surety Bond for Wake County Sheriff Donnie Harrison (collectively "Defendants"). For the reasons stated below, the Motion to Dismiss is ALLOWED IN PART and DENIED IN PART.

## I. BACKGROUND

The following facts, which are considered to be true for the purposes of the motion to dismiss, are taken from the Amended Complaint. Plaintiff Monifa A. Gethers ("Plaintiff") was employed as a sergeant with the Wake County Sheriff's Office. *See* Am. Compl. [DE-25] ¶¶ 3, 14, 52. On 5 January 2010, upon her arrival at work, Plaintiff was informed that a prisoner was in the "rubber room" on suicide watch and that he had spread feces on his body and on the walls and windows. *Id.* ¶ 15. Plaintiff escorted the naked prisoner into an adjacent cell so the soiled cell could be cleaned. *Id.* ¶ 21. She was later told that the prisoner had once again smeared himself and the new cell with feces. *Id.* ¶ 24. Plaintiff asked two male officers to take the naked prisoner to the shower.

*Id.* ¶¶ 25-26, 54. The prisoner was covered with a sheet and led to the shower by the male officers while Plaintiff supervised the procedure. *Id.* ¶ 28. Plaintiff maintains that she did not see the prisoner's naked body while he was in the shower. *Id.* ¶¶ 30-32. Upon the prisoner's return to the rubber room, however, he was kept in the nude and "any officer would be able to see this." *Id.* ¶ 33.

Approximately one week later, Plaintiff met with Defendant Wake County Sheriff Donnie Harrison ("Harrison"), Deputy Director Cleveland Sanders ("Sanders"), Jail Administrator Frank Gunter ("Gunter"), and Lieutenant William Burt and was told that she did not have a right to be in the shower area. *Id.* ¶ 37; *see also* Defs.' Mem. Supp. Mot. Dismiss [DE-30] at 3. About one week after that, Plaintiff met with Harrison, Sanders, Gunter, and Captain Brown. Am. Compl. [DE-25] ¶ 38. She was questioned about her interactions with the prisoner on 5 January 2010. *Id.* ¶ 40. She was also questioned about missing a staff meeting, parking in the parking deck, and whether she had misplaced her badge. *Id.* ¶ 39. Plaintiff was then accused of either being in unauthorized areas or having her badge used in unauthorized areas and was suspended from her job. *Id.* ¶ 40. Later that day, Harrison informed Plaintiff that the trouble with her badge was due to a problem with equipment, and he told Plaintiff to return to work the next day. *Id.* ¶¶ 41, 43. Plaintiff subsequently met with Harrison, Gunter, and Sanders and was asked to confirm that the prisoner at issue was on suicide watch, which she did. *Id.* ¶ 44.

On 19 February 2010, Plaintiff met with Harrison and Gunter and was given a memorandum stating that she was receiving a Demotion for Misconduct for failure to follow Wake County Jail Policy and Procedure. *Id.* ¶¶ 45-46. It was understood that this demotion was based upon the incident which occurred with the prisoner on 5 January 2010. *Id.* ¶ 47. The memorandum stated that an internal investigation had revealed that Plaintiff's misconduct was willful and intentional and that

2

further misconduct might be cause for dismissal. *Id.* ¶ 48. Plaintiff was admonished to conform to established policy and procedure. *Id.*

Shortly thereafter, Plaintiff retained an attorney who contacted Harrison to schedule a meeting to discuss the demotion. *Id.* ¶ 49. The meeting was set for the last week in March 2010. *Id.* During the meeting, Harrison's attorney told Plaintiff's attorney that Plaintiff was eligible to be "promoted back" to her rank of sergeant. *Id.* ¶ 52. Also during the meeting, Harrison told Plaintiff: "Don't come in here playing games, I'm the Sheriff – I could fire you!" *Id.* ¶ 53. Harrison wanted a "yes/no" answer as to whether Plaintiff was present while the prisoner was showering and whether Plaintiff could see him. *Id.* ¶ 54. Plaintiff informed Harrison that she did not recall seeing the prisoner naked while he was being transferred to and from the shower area, or in the shower stall. *Id.* ¶ 55. She further stated that she only saw the prisoner naked when he was sitting in the holding cell under suicide watch. *Id.* ¶ 56. Harrison told Plaintiff that he would investigate the matter. *Id.* ¶ 57. On 8 April 2010, Plaintiff was terminated for providing untruthful responses. *Id.* ¶¶ 65-66, 68.

Plaintiff initiated this action *pro se* on 11 July 2012 [DE-1]. On 27 August 2012, the court dismissed Defendant Wake County Sheriff's Office on the grounds that it is not an entity capable of being sued [DE-6]. On 18 April 2013, the court denied Harrison's motion to dismiss without prejudice and directed Plaintiff to file an amended complaint within twenty days of the date of the order [DE-23]. Plaintiff's Amended Complaint was filed through retained counsel on 6 May 2013 [DE-25]. In the Amended Complaint, Plaintiff asserts sex discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; claims for wrongful and retaliatory discharge in violation of North Carolina public policy; and a claim for

3

punitive damages. *Id.*

Defendants subsequently filed the pending Motion to Dismiss on 28 May 2013. Plaintiff filed a response on 11 June 2013. Defendants did not file a reply.

## II. DISCUSSION

A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to challenge the sufficiency of the allegations in the complaint. A motion to dismiss under this rule determines only whether a claim is stated on the facts alleged; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In order to survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[,]" but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Nor does the court accept as true "'unwarranted inferences, unreasonable conclusions, or arguments.'" *Id.* (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009)).

B.   Title VII Discrimination Claims

Plaintiff asserts Title VII sex discrimination claims both with regard to her demotion and her termination. Am. Compl., [DE-25] ¶¶ 69-79. Title VII makes it unlawful for an employer to discharge an employee or discriminate with respect to "compensation, terms, conditions, or privileges of employment" because of an individual's sex. 42 U.S.C. § 2000e-2(a)(1). Defendants argue that Plaintiff's sex discrimination claims must be dismissed because she fails to establish a *prima facie* case under the burden-shifting method articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),[1] or set forth sufficient allegations to succeed under the "mixed-motive" framework, *see Hill v. Lockheed Martin Logistics Management*, 354 F.3d 277, 284-85 (4th Cir. 2004). The court does not find Defendants' arguments to be well-taken.

As the Fourth Circuit has recently reiterated, the *prima facie* case is part of "an evidentiary standard . . . and is not a pleading requirement." *Craddock v. Lincoln Nat. Life Ins. Co.*, ___ F. Appx. ___, 2013 WL 3782786, at *2-3 (4th Cir. July 22, 2013). The Fourth Circuit noted that in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), the Supreme Court "rejected the notion that 'the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Craddock*, 2013 WL 3782786, at *3 (quoting *Swierkiewicz*, 534 U.S. at 511). "This is at least in part because 'if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case,' which is an *indirect* method of proof." *Id.* (quoting *Swierkiewicz*, 534 U.S.

---

[1] Absent direct evidence, the elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd on other grounds*, 132 S. Ct. 1327 (2012); *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

5

at 511). Accordingly, a plaintiff's claim for discrimination may survive a Rule 12(b)(6) motion to dismiss, even if it does not set forth all the elements of a *prima facie* case of discrimination, so long as it still states a plausible claim for relief. *Id.*

In this case, the court finds that the Amended Complaint meets this burden. Specifically, Plaintiff has alleged that she was "specifically told" by Harrison that her demotion and termination were "based solely on the fact that she was a woman." Am. Compl., DE # 25, ¶¶ 71, 76; *see also id.* ¶ 2. If proven, these statements would constitute direct evidence of discrimination. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (describing "direct evidence" as "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision") (internal quotation and citation omitted); *O'Connor v. Cons. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995) (explaining that direct evidence is "evidence which, if believed, would prove the existence of a fact . . . without any inference or presumptions), *rev'd on other grounds*, 517 U.S. 308 (1996). Accordingly, it may be unnecessary for Plaintiff to even rely on the *McDonnell Douglas* burden-shifting evidentiary scheme. *See Swierkiewicz*, 534 U.S. at 511; *Trans World Airlines v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination); *see also Corey v. U.S. Dep't of Housing & Urban Dev.*, 719 F.3d 322 (4th Cir. 2013) ("Of course, if the [the plaintiff] provides sufficient direct evidence of discrimination to prove a violation, resort to the *McDonnell Douglas* method is unnecessary."); *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1452 (4th Cir. 1990) (noting that where a plaintiff proved purposeful discrimination directly, "the *McDonnell Douglas* method of proof is irrelevant"). In light of these statements allegedly made by Harrison which reflect both directly on his alleged discriminatory

6

attitude and bear directly on Plaintiff's demotion and termination, the court must conclude that Plaintiff has stated a plausible Title VII sex discrimination claim.[2] Defendants' Motion to Dismiss is therefore DENIED as to Plaintiff's Title VII sex discrimination claims.

C.   Title VII Retaliation Claim

Plaintiff also asserts a Title VII retaliation claim with respect to the termination of her employment on 8 April 2010. Am. Compl. [DE- 25] ¶¶ 80-87. Under Title VII "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The elements of a *prima facie* claim for retaliation under Title VII are (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. *Coleman*, 626 F.3d at 190; *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

Defendants first argue that "it is unclear from the complaint whether plaintiff was engaging in a protected activity." Defs.' Mem. Supp. Mot. Dismiss [DE-30] at 8. "[P]rotected activities fall into either the opposition clause or the participation clause" of 42 U.S.C. § 2000e-3(a). *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999). To the extent Plaintiff contends that her hiring of an attorney and their subsequent participation in the meeting with Harrison and his attorney constitutes activity protected by the participation clause, *see* Am. Compl. [DE-25] ¶ 81, the court

---

[2] Nothing in this ruling prevents Plaintiff from also trying to prove her case using indirect evidence via the *McDonnell Douglas* evidentiary scheme. The court notes, however, that this ruling takes no position on whether Plaintiff's other allegations, if proven, would be sufficient to establish a *prima facie* case of sex discrimination.

7

cannot agree with this argument. The participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the [Equal Employment Opportunity Commission ("EEOC")]; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). Federal courts applying Title VII have consistently held that participating in an internal investigation or meeting with an employer is not protected participation activity. *See, e.g., Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 49-51 (2d Cir. 2012); *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 747 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1603 (2011); *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) ("Accusations made in the context of charges before the [EEOC] are protected by statute; charges made outside of that context are made at the accuser's peril."); *but see Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 280 (2009) (declining to reach this issue). Because the participation clause has been interpreted as being limited to formal EEOC proceedings, Plaintiff's taking part in an internal meeting with Harrison and their respective attorneys does not constitute protected activity under the participation clause of Title VII.

The court next considers whether plaintiff engaged in opposition activity. "To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Id.* The EEOC Compliance Manual provides guidance as to what constitutes protected opposition to discriminatory practices. According to the manual, "[a] complaint or protest about

8

alleged employment discrimination to . . . [an] attorney" is protected. *EEOC Compliance Manual*, § 8-II.B.2, available at http://www.eeoc.gov/policy/docs/retal.html (last visited December 31, 2013). "Furthermore, a complaint . . . by an employee's representative, rather than by the employee herself, constitutes protected opposition . . . ." *Id.* The protection of the opposition clause "applies if an individual explicitly or implicitly communicates to his or her employer or other covered entity a belief that its activity constitutes a form of employment discrimination that is covered by any of the statutes enforced by the EEOC." *Id.* § 8-II.B.1.

At this early stage of the proceedings, the court is not able to determine whether Plaintiff's hiring of an attorney and their subsequent participation in the meeting with Harrison and his attorney constitutes protected activity under the opposition clause of Title VII. Here, Plaintiff has alleged that she retained an attorney to represent her rights and interests with regard to her demotion and that such demotion was due to the fact that she is a woman. *See, e.g.*, Am. Compl. [DE-25] ¶¶ 49, 71. Plaintiff has also alleged that she and her attorney met with Harrison and his attorney in March 2010 to discuss the demotion and that the circumstances surrounding Plaintiff's interaction with the prisoner on 5 January 2010 were discussed in that meeting. *Id.* ¶¶ 49, 54-56. One plausible inference from these allegations is that Plaintiff complained of sex discrimination to her attorney. Another plausible inference is that Plaintiff and/or her attorney complained of sex discrimination during the March 2010 meeting with Harrison and his attorney. It may well be that discovery will reveal that neither Plaintiff nor her attorney made any statement(s) that would qualify as protected activity under Title VII. However, until such time, the court finds that the factual allegations in the amended complaint are sufficient to demonstrate that Plaintiff engaged in a protected activity.

Defendants also argue that plaintiff has failed to make sufficient allegations regarding the

9

third element of her *prima facie* case, that is, to allege adequate facts to demonstrate a causal connection between her discharge and the protected expression. Because of this deficiency, Defendants maintain that Plaintiff's retaliation claim should be dismissed for failure to state a claim upon which relief may be granted. However, "under Fourth Circuit law, very little proof is required to establish the causal link in a retaliation case; in fact, in many instances, the connection is inferred from the mere act of termination . . . ." *Barbier v. Durham Cnty. Bd. of Educ.*, 225 F. Supp. 2d 617, 627 (M.D.N.C. 2002); *see also Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Although Karpel presents little or no direct evidence of a causal connection between her protected activity and Inova's adverse action, little is required."); *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991) (stating, in reference to the causal connection element of a retaliation case, that "it can be inferred that the termination was triggered by the [protected activity]").

In this case, Plaintiff alleges that it was the "general practice" in the Wake County Sheriff's Office "that no disciplined officer brought in a third-party [, *e.g.*, an attorney,] during a disagreement with the chain of command." Am. Compl. [DE-25] ¶ 60. She further asserts that it was only after she hired an attorney that the disciplinary action taken against her escalated from demotion to dismissal. *Id.* ¶¶ 61, 84; Pl.'s Mem. Resp. Mot. Dismiss [DE-31] at 7. These factual allegations are sufficient to support a causal connection between the alleged protected activity and Plaintiff's discharge. Accordingly, Defendants' Motion to Dismiss is DENIED as to Plaintiff's Title VII retaliation claim.

D.  <u>Wrongful and Retaliatory Discharge Claims</u>

Next, the court considers Plaintiff's state law claim that Harrison wrongfully discharged her

10

from her employment in violation of North Carolina public policy.[3] Am. Compl. [DE-25] ¶¶ 88-90. Defendants first argue that this claim must be dismissed because Plaintiff "does not identify what public policy her termination has violated." Defs.' Mem. Supp. Mot. Dismiss [DE-30] at 9. Although it is true that the Amended Complaint does not provide a specific citation to a North Carolina statute, the allegations of sex discrimination under Title VII, along with the facts as articulated in the Amended Complaint, certainly provide enough detail to give Defendants fair notice that Plaintiff is alleging that she was wrongfully terminated because of her sex in violation of the North Carolina Equal Employment Practices Act ("NCEEPA" or "the Act"). *See Twombly*, 550 U.S. at 555. The Act states in pertinent part that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . sex . . . . " N.C. Gen. Stat. § 143-422.2. Defendants themselves have recognized that "[t]he context of [plaintiff's] complaint suggests she is alleging a violation of public policy according to N.C. Gen. Stat. § 143[-]422.2." Defs.' Mem. Supp. Mot. Dismiss [DE-30] at 9 (footnote omitted). As a result, the court will not dismiss the wrongful discharge claim on the basis of this argument.

Defendants further contend that N.C. Gen. Stat. § 143-422.2 does not create a private cause of action. Although Defendants are correct that a plaintiff may not bring a statutory claim under the NCEEPA, the Act does support a common law claim for wrongful discharge in violation of public policy, as is alleged here. *See, e.g., McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 720-21 (4th Cir. 2003); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "Given the similar

---

[3] This court has authority to exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

language and underlying policy of § 143-422.2 and Title VII . . . , the North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143-422.2 . . . ." *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995); *see also N.C. Dep't of Corr. v. Gibson*, 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983). Thus, a claim for wrongful discharge in violation of the public policy set forth in the NCEEPA rises and falls with its counterpart under Title VII. *See, e.g., Phillips v. J.P. Stevens & Co., Inc.*, 827 F. Supp. 349, 353 (M.D.N.C. 1993) ("[S]ince Plaintiff states a claim under Title VII, she states a claim for wrongful discharge in violation of the public policy expressed in N.C.G.S. § 143-422.2."). Because Plaintiff has adequately stated a Title VII sex discrimination claim with regard to the termination of her employment, her claim for wrongful discharge in violation of the NCEEPA will be allowed to proceed. *See, e.g., Campbell v. Enter. Holdings, Inc.*, No. 5:11-CV-424-FL, 2011 WL 6780791, at *5 (E.D.N.C. Dec. 27, 2011); *Sampson v. Leonard*, No. 4:10-CV-121-D, 2011 WL 129634, at *5 (E.D.N.C. Jan. 12, 2011).

To the extent that Plaintiff has attempted to assert a claim that she was wrongfully discharged in violation of public policy due to retaliation, *see* Am. Compl. [DE-25], ¶ 88; Pl.'s Mem. Resp. Mot. Dismiss [DE-31], at 8-9, such a claim cannot survive. "The NCEEPA does not express any public policy concerning retaliation for opposition to any form of discriminatory practice. . . . Moreover, no North Carolina court has interpreted the NCEEPA to include a claim for discharge in retaliation for complaining about discriminatory employment practices." *Mullis v. Mechanics & Farmers Bank*, 994 F. Supp. 680, 688 (M.D.N.C. 1997) (citations omitted); *see also Efird v. Riley*, 342 F. Supp. 2d 413, 428-29 (M.D.N.C. 2004); *Chung v. BNR, Inc./N. Telecom, Inc.*, 16 F. Supp. 2d 632, 634 (E.D.N.C. 1997). Here, Plaintiff acknowledges that such a claim is not viable. Pl.'s Mem. Resp. Mot. Dismiss [DE-31] at 8-9. Thus, Defendants' Motion to Dismiss is ALLOWED as

to Plaintiff's state law claim for retaliatory discharge in violation of public policy.

E.  Punitive Damages

In her prayer for relief, Plaintiff seeks punitive damages with respect to her federal and state claims. Am. Compl. [DE-25] at 11. However, a plaintiff is not entitled to recover punitive damages against a government, government agency, or a political subdivision in an action brought under Title VII. *See* 42 U.S.C. § 1981a(b)(1); *Efird*, 342 F. Supp. 2d at 430. A sheriff being sued in his official capacity is a governmental entity. Therefore, 42 U.S.C. § 1981a(b)(1) does not allow Plaintiff to recover punitive damages from Harrison. *See, e.g., King v. McMillan*, Civil Action No. 7:05CV00521, 2008 WL 80234, at *2 (W.D. Va. Jan. 7, 2008); *McGriff v. Decatur Cnty. Sheriff's Office*, No. 6:04 CV 21 HL, 2005 WL 1899392, at *1-2 (M.D. Ga. Aug. 9, 2005).

It is also well settled that under North Carolina public policy, in the absence of a statute indicating otherwise, a plaintiff may not recover punitive damages against government entities. *See, e.g., Efird*, 342 F. Supp. 2d at 430; *Long v. City of Charlotte*, 306 N.C. 187, 208, 293 S.E.2d 101, 115 (N.C. 1982). In this case, Plaintiff does not cite any North Carolina statute that specifically authorizes punitive damages against Harrison in his official capacity. *See Crain v. Butler*, 419 F. Supp. 2d 785, 793-94 (E.D.N.C. 2005) (under North Carolina law, punitive damages could not be recovered against sheriff in his official capacity).

Furthermore, Plaintiff concedes that her claim for punitive damages cannot survive under Title VII or under state law. *See* Pl.'s Mem. Resp. Mot. Dismiss [DE-31] at 9. Consequently, Defendants' Motion to Dismiss is ALLOWED as to Plaintiff's claim for punitive damages.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [DE-29] is ALLOWED IN PART

and DENIED IN PART. Plaintiff's claim for retaliatory discharge in violation of North Carolina public policy and her claim for punitive damages are DISMISSED. The claims remaining in this action are Plaintiff's Title VII sex discrimination and retaliation claims and her claim for wrongful discharge in violation of North Carolina public policy.

SO ORDERED.

This, the 2nd day of January, 2014.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge