UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-430-F

| | |
|---|---|
| MONIFA A. GETHERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| WAKE COUNTY SHERIFF DONNIE ) | |
| HARRISON and JOHN DOE, SURETY ) | |
| BOND for WAKE COUNTY SHERIFF ) | |
| DONNIE HARRISON, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the Defendants' (collectively, "Harrison") motion for summary judgment [DE-44]. For the reasons that follow, the motion is ALLOWED and this case is DISMISSED.

## I. BACKGROUND

Plaintiff Monifa A. Gethers ("Gethers") was formerly employed as a detention officer with the Wake County Sheriff's Office. Prior to her termination, the Sheriff's Office had promoted her to the rank of sergeant. Upon her arrival at work on January 5, 2010, Gethers's supervising officer, Captain Brown, informed her that a prisoner was in the "rubber room" on suicide watch and that he had spread feces on his body and on the walls and windows of his cell. While other officers donned protective gear and prepared to extract the prisoner, Gethers walked to the prisoner's cell by herself, removed him, and placed him in a holding cell. Gethers reports that Captain Brown praised her for "handling [the situation] so diligently."[1]

---

[1] Conspicuously absent from the record is any affidavit, deposition testimony, or other statement from Captain Brown.

Later that evening, the prisoner once again smeared himself and the new cell with feces and Gethers determined that the prisoner should be escorted to the shower. Gethers requested assistance from Officers Jones and Parent (both males) to take the naked prisoner to the shower. Although there is contradictory evidence in the record on this point, Gethers maintains that this time she proceeded to the cell with Officers Jones and Parent and extracted the prisoner with their assistance. During this removal, the prisoner had wrapped a blanket around himself but he was otherwise naked. When the officers arrived at the shower area with the prisoner, Officers Jones and Parent informed Gethers that they could assist the prisoner with taking a shower. However, Gethers remained in the shower area during the prisoner's shower.

Detention center policy is that employees should not be present when an opposite-sex inmate showers or is otherwise naked. Although it does not appear that the policy is in writing or has otherwise been formally distributed to staff, all parties apparently agree that if an officer observes a member of the opposite sex showering, the officer is subject to disciplinary action, to include demotion. *See* Gethers Dep. [DE-44-2] at 23-24. In an effort to comply with this policy, Officers Jones and Parent state that they asked Gethers to leave the shower area twice while they assisted the prisoner, but she refused. Gethers maintains that she does not remember Officers Jones or Parent informing her that she could leave.

When Sheriff Harrison learned about the incident, he initiated an investigation. Multiple witnesses indicated that Gethers remained in the shower area in direct view of the naked prisoner despite the fact the prisoner was under control. Gethers denies all of this; she maintains that Officers Jones and Parent never told her she could leave and denies that she ever saw the inmate naked while he was in the shower. The official investigation report recommended that Gethers

2

be demoted for two reasons: (1) remaining present while a male inmate showered in the nude without justification; and (2) being untruthful when questioned as part of the investigation. Sheriff Harrison demoted Gethers on February 19, 2010. Her demotion letter indicated that future misconduct may result in termination.

In response, Gethers obtained counsel and scheduled a meeting with Sheriff Harrison. During that meeting, Gethers denied that she could see the prisoner naked while he showered. Sheriff Harrison ultimately determined that Gethers was untruthful during this meeting and he terminated her employment. This gender discrimination and retaliation lawsuit followed.

## II. STANDARD OF REVIEW

At summary judgment, the court must examine the evidence presented by both parties and determine if there is a need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Greater Balt. Ctr. for Pregnancy Concerns, Inc.* v. *Mayor & City Council of Balt.*, 721 F.3d 264, 283 (4th Cir. 2013). The court examines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986). Where the moving party shows that the evidence is so one-sided that it should prevail as a matter of law, the burden shifts to the nonmoving party to come forward with affidavits, depositions, answers to interrogatories, or other evidence demonstrating that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986); *Matsushita*, 475 U.S. at 587; *Pension Ben. Guar. Corp. v. Beverly*, 404 F.3d 243, 246-47 (4th Cir. 2005). An issue of fact is genuine if a reasonable jury could find for the nonmoving party. *Liberty Lobby*, 477 U.S. at 248. A fact is material if proof of the fact might affect the outcome of

3

the case under the substantive law. *Id.* The facts should be viewed in the light most favorable to the nonmoving party and all reasonable inferences should be made in favor of the nonmoving party. *Id.* at 255; *Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996).

### III. DISCUSSION

**A. Gender Discrimination (Count One)**

Gethers contends that Sheriff Harrison demoted her on the basis of her gender, in violation of Title VII. Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . any individual . . . or otherwise discriminate against any individual . . . because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII plaintiffs may establish a claim for intentional discrimination by two methods of proof. The first method is by

> demonstrating through direct or circumstantial evidence that . . . discrimination motivated the employer's adverse employment decision. The employee, however, need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, so long as it was a motivating factor. In such cases, historically referred to as "mixed-motive" cases, it is sufficient for the individual to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons.

*Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc). If a plaintiff makes such a showing, the defendant may limit the remedies available to the plaintiff by showing that it would have made the same decision absent any discriminatory animus. *Id.* Statements by non-decisionmakers typically are not direct evidence that discrimination motivated the employer's decision. *Hill*, 354 F.3d at 286.

Gethers submits that a statement by Director Gunter, the director of the detention center, constitutes direct evidence of discrimination. During the course of the investigation, Director Gunter told Gethers, "you're a female, you should not have been there." Gethers Dep. [DE-44-2]

4

at 111. This is not direct evidence of discrimination. While it is true that Gethers's gender had some influence on the decision to demote her, that does not mean her demotion was based on a discriminatory motivation. In employment of this type, a policy prohibiting women from being in the shower area while a male prisoner showers is simply not discriminatory. The nature of the employment requires some gender-specific policies designed to protect the privacy and dignity of the inmates.[2] Because the policy itself is not discriminatory, the fact that Director Gunter stated, "you're a female, you should not have been there" is not direct evidence of discrimination. The statement simply describes the factual circumstances of the incident with the prisoner and why Gethers's presence constituted a violation of the policy.

Sheriff Harrison has also submitted uncontradicted evidence that Director Gunter is not a decisionmaker. As noted above, statements by non-decisionmakers do not constitute direct evidence of discrimination. *Hill*, 354 F.3d at 286. Although Gethers maintains in her brief opposing the motion for summary judgment [DE-48] that Sheriff Harrison stated he demoted her based on her gender, she cites to no record evidence to support this allegation.[3] *Id.* at 3. The allegation is contained in Gethers complaint, *see* Am. Compl. [DE-25] ¶ 71, but a party opposing

---

[2] Contrary to Gethers's arguments, inmates do have a right to privacy in prison. *See Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981) ("Most people, however, have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating. When not reasonably necessary, that sort of degradation is not to be visited upon those confined in our prisons.")

[3] On page 3 of her brief [DE-48], Gethers cites to Sheriff Harrison's affidavit [DE-44-7], paragraph 7, to support the claim that "Plaintiff was demoted by Sheriff Harrison because she was a woman." [DE-48] at 3. This appears to be a clerical error. Paragraph 7 notes that Gethers's statements regarding the incident conflicted with the statements from Officers Jones and Parent, but there is nothing suggesting that Sheriff Harrison demoted Gethers on the basis of her gender in that paragraph. The court has reviewed the remainder of this affidavit and similarly finds that Sheriff Harrison never outright stated he demoted Gethers solely because she was a woman, nor does the affidavit contain any other direct evidence of gender discrimination.

5

summary judgment may not rely on the factual allegations in the complaint.  *Celotex*, 477 U.S. at 324.  Accordingly, there is no direct evidence of gender discrimination in this case.

In the absence of direct evidence, the plaintiff must proceed under the second method of proof: the burden-shifting pretext framework, as espoused in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Hill*, 354 F.3d at 285.  Under the familiar *McDonnell Douglas* scheme, a plaintiff first must establish a prima facie case of discrimination.  411 U.S. at 802.  To establish a prima facie case of employment discrimination in the form of a demotion, a plaintiff must present evidence demonstrating that: "(1) plaintiff is a member of a protected class; (2) plaintiff was demoted; (3) at the time of the demotion . . . she was performing . . . her job at a level that met . . . her employer's legitimate expectations; and (4) following the demotion, the plaintiff was replaced by someone of comparable qualifications outside the protected class." *Rankin v. Greater Media, Inc.*, 28 F. Supp. 2d 331, 336 (D. Md. 1997); *see also Hill*, 354 F.3d at 285.  If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse employment action.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  If the defendant meets its burden of production, the presumption of discrimination created by the prima facie case disappears from the case and the plaintiff then must prove that the defendant's articulated reason was a pretext for unlawful discrimination.  *See id.* at 253-55.

Here, Gethers cannot meet her burden of demonstrating a prima facie case because she fails to offer evidence of satisfactory job performance at the time of the demotion.  Gethers also fails to demonstrate that following the demotion she was replaced by someone of comparable qualifications outside the protected class or that the position remained open.  Sheriff Harrison's

6

brief indicates that Gethers's job performance was not satisfactory at the time of her demotion, citing to a report prepared by Captain James Stevens. [DE-44-6]. Captain Stevens lists a number of issues with Gethers's job performance, including: (1) video evidence that Gethers removed the prisoner from the cell by herself while other officers prepared for a team extraction, despite the prisoner's unstable condition and history of assaultive behavior; (2) Gethers remained in a shower area while a male inmate showered without justification; and (3) Gethers lost her security identification badge on multiple occasions. [DE-44-6] at 13-14.

Gethers, on the other hand, presents no evidence that her job performance was satisfactory at the time of her demotion. While she emphasizes that Captain Brown praised her for moving the prisoner to another cell by herself, the court agrees with Sheriff Harrison that this action presented a serious safety risk to Gethers, the other officers and the other prisoners. The prisoner was agitated, smearing feces on the cell, and he had a history of assaultive behavior. Gethers knew other officers were in the process of putting on protective gear in preparation for a team extraction, *see* Gethers Statement [DE-44-6] at 8, but she decided to take matters into her own hands and in the process created a serious safety risk by extracting an aggressive inmate without assistance. The fact Gethers removed the prisoner without incident does not mean her decision, considered *ex ante*, was reasonable. In addition, and as discussed in more detail below, Gethers also admits to remaining in the shower area while the male prisoner showered despite the fact the prisoner was under control and two male officers were present. *See* Gethers Dep. [DE-44-2] at 45-46 (noting that she remained approximately five to ten feet away from the prisoner while he showered), 46 ("[Question from Defendant's Counsel]: Was [the prisoner] agitated at that time? [Answer from Gethers]: No.").

7

Nor does Gethers offer any other evidence that suggests her job performance was satisfactory at the time of the demotion. Although she notes that she was promoted to the rank of sergeant and encouraged to attend an officer instruction school, these events occurred in 2005 and early 2009, respectively. Gethers Aff. [DE-48-1] ¶¶ 4, 10. Thus, neither of these events speak to her performance issues at the time of this incident (January, 2010), which is the relevant inquiry for purposes of the satisfactory job performance element. *See Hill*, 354 F.3d at 285; *Farmer v. Autozone, Inc.*, No. 5:98-CV-892-BR3, 2000 WL 33682701, at *4 (E.D.N.C. January 11, 2000) ("[P]rior promotions and acceptable work performance have no bearing on the manner in which [the plaintiff] was performing his job at the time he was terminated."). Because Gethers has the burden showing that her job performance was satisfactory at the time of the demotion and Sheriff Harrison has submitted uncontradicted evidence that it was not, Gethers has not met her burden of establishing a prima facie case of gender discrimination.

Neither party presents any evidence on the fourth element of a prima facie case, which requires a showing that: "following the demotion, the plaintiff was replaced by someone of comparable qualifications outside the protected class [or the position remained open]." *Hill*, 354 F.3d at 285; *Rankin*, 28 F. Supp. 2d at 336. The parties' briefing does not contain any discussion (much less citation to the record) regarding whether the position remained open or was given to someone outside the protected class. As Gethers has the burden of proof on this issue, Sheriff Harrison is entitled to summary judgment on this basis as well.

The parties presumably do not explain whether someone outside the protected class was given Gethers's job because they both cite to a more generalized standard for the fourth element of the prima facie case: "that similarly-situated employees outside the protected class were

8

treated more favorably." Although this is not the language used in *Hill*, Gethers fails to provide any evidence of this "similarly situated" element either. Gethers submits that the proper "similarly situated" comparison should be between a male officer remaining in the shower area while a male prisoner showered and Gethers's decision to remain in the shower area in this case. Nobody disputes that a male officer would not be disciplined in these circumstances. But that is because this hypothetical male officer is not "similarly situated" to Gethers. A male officer assisting a male prisoner with his shower is not the same as a female officer assisting a male prisoner. The proper comparison in this case is a male officer remaining in the shower area while a female prisoner showers, and Gethers does not present any evidence suggesting a male officer would not be punished in those circumstances.

Gethers also notes that throughout the internal sheriff's office investigation and this litigation she has maintained she never actually saw the prisoner nude while he showered, only that she remained "in the shower area." The phrase "in the shower area" apparently means that Gethers remained five to ten feet away from the prisoner while he showered with Officer Jones blocking Gethers's view of the inmate. Putting aside the fact that this assertion is contradicted by the statements of every other witness to the incident, the fact Gethers never saw the inmate naked is largely beside the point. The purpose of the policy is to provide inmates some degree of privacy and respect while they are nude. When Officers Jones and Parent noted that they had the situation under control (a point addressed in more detail below), there was no legitimate need for Gethers to remain in the shower area. Remaining five to ten feet away from a prisoner while he showers without justification creates a substantial risk that Gethers will see the prisoner nude and

degrades the prisoner's right to privacy.[4]  A male corrections officer who remained "in the shower area" while a female showered without justification would presumably be subject to the same demotion Gethers received.

Gethers also launches a number of attacks on the credibility of the officers who provided witness statements in the sheriff office investigation and who submitted affidavits as part of this litigation, presumably in an attempt to argue that a trial is necessary.  Gethers's approach misunderstands her burden of production in this case.  As explained above, Gethers must come forward with record evidence demonstrating a prima facie case of gender discrimination.  *Hill*, 354 F.3d at 285.  Gethers presents no evidence of satisfactory job performance or disparate treatment.  In fact, Gethers' own testimony establishes two facts: (1) she remained "in the shower area" approximately five to ten feet away from the prisoner while he showered while two male officers assisted the prisoner; and (2) the prisoner did not present an imminent risk of danger, which may have justified her violation of the policy.  *See* Gethers Dep. [DE-44-2] at 45-46 (noting that she remained approximately five to ten feet away from the prisoner while he showered), 46 ("[Question from Defendant's Counsel]: Was [the prisoner] agitated at that time?

---

[4]  Gethers cites to *Riddick v. Sutton*, 794 F. Supp. 169, 171 (E.D.N.C. 1992) and *Timm v. Gunter*, 917 F.2d 1093, 1102 (8th Cir. 1990) for the proposition that "minimal intrusions on an inmate's privacy [such as when a female officer observes a male prisoner naked because the exigencies of the situation demand it] are . . . outweighed by institutional concerns for safety and equal employment opportunities." *Timm*, 917 F.2d at 1102.  The court and Sheriff Harrison agree with this point.  That is precisely why Gethers was not demoted for observing the inmate naked when he was in the cell on suicide watch or being transferred to the shower, because in those incidents safety concerns outweighed the inmate's right to privacy.  Remaining in the shower area while a male inmate showers when two other male guards are present and have the situation under control is more than a minimal intrusion on privacy.

10

[Answer from Gethers]: No.").[5]  Thus, even disregarding the statements from the other officers, Gethers's own testimony demonstrates that she violated a departmental policy.  Moreover, nothing in the record suggests that Sheriff Harrison would not demote a similarly-situated male officer in these circumstances.

Finally, Gethers argues at length that it was improper for Sheriff Harrison to demote her on the basis of an unwritten policy.  As an initial matter, the fact the policy was unwritten is simply not relevant to the issue of whether Gethers has presented a prima facie case of gender discrimination, which requires, among other things, that Gethers demonstrate satisfactory job performance and disparate treatment.  In addition, adverse employment actions based on unwritten policies are not impermissible:

> Furthermore, the fact that the policy was unwritten does not mean that it is an unfit standard to which to hold employees. The inquiry in such cases is not about what the policy actually entailed, but whether the same action was taken by multiple similarly-situated employees with regard to the workplace policy and if they were treated differently in accordance with their membership in a protected class.

*Quintanilla v. AK Tube LLC*, 477 F. Supp. 2d 828, 834 (N.D. Ohio 2007); *see also McClement v. Port Auth. Trans-Hudson*, 505 F. App'x 158, 162 (3d Cir. 2012) ("But the mere fact that a policy is unwritten does not necessarily make it illegitimate.").  As counsel for the Defendant aptly noted at Gethers' deposition, a male employee who without justification enters the women's employee locker room would be subject to termination, despite the fact that no written policy

---

[5] Although Gethers initially testified that the inmate was not agitated at the time he was in the shower, later in her deposition she suggested the incident was not under control because the prisoner has a history of assaultive behavior.  Gethers Dep. [DE-44-2] at 55-58.  Gethers notes, "[h]e wasn't aggressive but, like I said, had I not been there, it was a possibility it could have been an aggressive situation."  *Id.* at 58.  Because two male officers were present and the prisoner was not actively aggressive, the court finds that the situation was "under control" and Gethers's presence was not justified in these circumstances.

11

exists prohibiting such conduct.

To summarize, Gethers has failed to produce sufficient direct evidence of discrimination, nor has she demonstrated a prima facie case of discrimination under the *McDonnell-Douglas* burden-shifting framework. Accordingly, Sheriff Harrison is entitled to summary judgment on the Title VII gender discrimination claim (count one).

**B. Title VII Retaliation Claim (count three)**

Sheriff Harrison also moves for summary judgment on Gethers' Title VII retaliation claim. Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). A plaintiff may establish a Title VII retaliation claim under the burden-shifting framework set forth in *McDonnell Douglas*. First, a plaintiff bears the burden of establishing a prima facie case of retaliation, whereupon the burden shifts to the employer to establish a legitimate, non-retaliatory reason for the adverse action. If the employer sets forth a legitimate, non-retaliatory reason for the action, the plaintiff then bears the burden of showing the employer's proffered reasons are pretextual or his claim will fail. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) her employer took an adverse action against her; and (3) a causal connection exists between the protected activity and the asserted adverse action. *King v. Rumsfeld*, 328 F.3d 145, 151-52 (2003). With respect to the first element, protected activity falls

12

into two categories: participation activity or opposition activity. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Participation activity refers to activity in formal Title VII EEOC proceedings, such as presenting a formal charge, testifying, assisting or participating in a formal investigation. *Townsend v. Benjamin Enters.*, 679 F.3d 41, 49 (2d Cir. 2012). "Opposition activity includes internal complaints about alleged discriminatory activities." *Session v. Montgomery Cnty. Sch. Bd.*, 462 F. App'x 323, 325 (4th Cir. 2012) (unpublished) (per curiam) (citing *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)). Opposition activity is protected when an employee opposes an "actual unlawful employment practice" or "an employment practice that the employee *reasonably believes* is unlawful." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006).

In this case, Gethers fails to provide any evidence that she engaged in protected activity. With respect to opposition activity, Gethers suggests she was fired for scheduling a meeting with Sheriff Harrison and her attorney to discuss her demotion. Gethers Brief [DE-48] at 15; Gethers Dep. [DE-44-2] at 120-22. But neither her deposition testimony nor her affidavit indicate that she actually opposed (or even discussed) an unlawful employment practice at the meeting itself. The deposition indicates that Gethers discussed the reasons for her demotion at the meeting with Sheriff Harrison. As noted above, the Gethers's demotion was not discriminatory and there is no indication in the record that she discussed any other employment practices at the meeting. Thus, there is simply no evidence of protected opposition activity on this record.

With respect to participation activity, Gethers's deposition indicates that she contacted the National Labor Relations Board about her demotion. Gethers Dep. [DE-44-2] at 121. However, the National Labor Relations Board is not the same as the EEOC and protected

13

participation activity under Title VII requires a formal EEOC charge or investigation. *See Townsend*, 679 F.3d at 49. And even assuming that a complaint to the NLRB can be considered protected participation activity, Gethers presents no evidence that Sheriff Harrison had knowledge of this complaint before he fired her. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) ("The first thing [the plaintiff] must be able to prove, therefore, is [the decisionmaker's] knowledge that he engaged in a protected activity.").

Gethers has failed to provide sufficient evidence that she engaged in protected activity and she therefore has failed to make a prima facie showing on her retaliation claim. Accordingly, her retaliation claim (count three) is dismissed.

## IV. CONCLUSION

Sheriff Harrison's motion for summary judgment [DE-44] is ALLOWED in its entirety and counts one and three are hereby DISMISSED. Gethers has voluntarily dismissed the remaining claims in this case, counts two and four. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This, the 12th day of June, 2014.

JAMES C. FOX
Senior United States District Judge